UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA                                    :
                                                            :
v.                                                          :   12 Cr. 356 (JMF)
                                                            :
MICHAEL McMANUS,                                            :   OPINION AND ORDER
                                                            :
                        Defendant.                          :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/10/12

JESSE M. FURMAN, United States District Judge:

    Defendant Michael McManus is charged with four counts of bank robbery in violation of Title 18, United States Code, Section 2113(a), in connection with the robberies of two bank branches seven blocks apart over the course of four months earlier this year. He moves to suppress certain evidence on the ground that his arrest was not supported by probable cause. In addition, he moves for a severance of the four counts in the indictment pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure. For the reasons stated below, McManus's motions are denied.

## BACKGROUND

    As noted, the present case involves four robberies of two banks: robberies on January 26, 2012, and April 17, 2012, of an HSBC branch located at 769 Broadway, in Manhattan; and robberies on February 14, 2012, and March 12, 2012, of a Citibank branch located at 555 LaGuardia Place, only seven blocks away from the HSBC branch. (Compl. ¶¶ 6-13). Each robbery was captured on surveillance videotape. (Compl. ¶¶ 7, 9, 11, 13). As the surveillance videotapes show, each robbery was committed by a white male with a stocky build and little or no facial hair who was wearing a black jacket, black

pants, sunglasses, a hat, and (in three of the robberies) a metal wallet chain attached to his pants.  (Compl. ¶¶ 6-12; Gov't Mem. of Law Regarding Mot. for Severance ("Gov't Severance Mem.") (Docket No. 12) at 2-3; Def.'s Rep. Mem. of Law Regarding Mot. for Severance ("Def.'s Severance Rep. Mem.") (Docket No. 18) at 2-3).  In each case, the robber, carrying a backpack, approached a teller, pulled what appeared to be a firearm from his waistband, made verbal demands for money, and, after receiving money, stuffed it into a pouch that he had brought with him.  (Compl. ¶¶ 6-12; Gov't Severance Mem. at 3; Def.'s Severance Rep. Mem. at 2-3).

As it happens, one of the law enforcement officers involved in investigating the four robberies had arrested McManus for an earlier robbery of the HSBC branch.  (Aff. of John Timpanaro ("Timpanaro Aff.") (Docket No. 20, Ex. A) ¶ 3).  He watched the surveillance videotape of the April 17, 2012 robbery of the HSBC branch and came to the conclusion that the perpetrator was McManus.  (*Id.*).  Thereafter, agents from the Federal Bureau of Investigation ("FBI") created a photographic array with pictures of McManus and five other bald, white men of similar build.  (Aff. of Richard Busick ("Busick Aff.") (Docket No. 20, Ex. B) ¶¶ 2-3).  On April 18, 2012, the day after the robbery, agents showed the array to a bank teller who had witnessed the robbery the day before.  (*Id.* ¶ 3).  According to an FBI agent involved in the investigation, the teller identified McManus as the bank robber "without hesitation."  (*Id.*; *see also* Compl. ¶ 16).

Shortly after the teller identified McManus as the perpetrator of the April 17, 2012 robbery, law enforcement officers arrested McManus in lower Manhattan.  (Busick

Aff. ¶ 3; Timpanaro Aff. ¶ 6; Compl. ¶ 14).[1] At the time of his arrest, which was made without an arrest warrant, McManus had in his possession a roll of quarters, something the robber had obtained in the robbery of HSBC the prior day, and boots resembling those worn during the last robbery. (Compl. ¶¶ 6(c), 15). He also had documents indicating that he had been staying in a particular room at a nearby hotel. (Aff. of Richard Busick in Supp. of Search Warrant, 12 Mag. 1060 (Docket No. 15, Ex. C), ¶ 14). On the basis of that evidence, agents sought and received a search warrant to search the hotel room, where they found and seized, among other things, a cap gun, backpacks similar to those used in the robberies, hats, white latex gloves, rolls of quarters, and DVDs of movies about bank robbers, such as *The Town*. (Docket No. 15, Ex. D).

## DISCUSSION

As noted, McManus moves, first, to suppress certain evidence, including the evidence seized upon his arrest and pursuant to the search warrant. In addition, he moves for severance of the four counts. The Court will address each motion in turn.

**A.     The Suppression Motion**

McManus's first motion — to suppress certain evidence — is based exclusively on the claim that there was no probable cause to arrest him. As the Second Circuit has explained, "[p]robable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy

---

[1] Although the complaint references the fact that the teller identified McManus as the robber, it does not make clear that this identification occurred prior to McManus's arrest. On July 26, 2012, the Court issued an order granting the Government leave to file a supplemental affidavit regarding the teller's pre-arrest identification of McManus (Docket No. 19), and the Government did so on August 1, 2012. (Docket No. 20). McManus responded to the Government's supplemental filing on August 7, 2012. (Docket No. 21).

information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Steppello*, 664 F.3d 359, 363-64 (2d Cir. 2011) (quoting *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004)) (internal quotation marks omitted); *accord Marcavage v. City of New York*, — F.3d —, 10-4355-cv, 2012 WL 3125225, at *9 (2d Cir. Aug. 2, 2012).  The standard "is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Because the standard is fluid and contextual, a court must examine the totality of the circumstances of a given arrest." *Steppello*, 664 F.3d at 364 (quoting *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008)) (internal quotation marks omitted).  More specifically, "[a] court assessing probable cause must examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Marcavage*, 2012 WL 3125225, at *9 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)) (internal quotation marks omitted).

Applying these standards here, there was plainly probable cause to support McManus's arrest.  First and foremost, according to an FBI agent involved in the investigation, a teller who witnessed the robbery at HSBC on April 17, 2012, identified McManus as the robber — "without hesitation" — in a photographic array the very next day, before McManus's arrest.  (Busick Aff. ¶ 3).  Given that the teller was a disinterested eyewitness to one of the robberies, that identification alone justified McManus's arrest.  *See, e.g.*, *United States v. Rollins*, 522 F.2d 160, 164 (2d Cir. 1975) ("Specific allegations of reliability or past reliable contact are not required when the

informant in question was an eyewitness to the crime."); *United States v. Wyche*, 307 F. Supp. 2d 453, 463 (E.D.N.Y. 2004) (holding that an arrest, "made pursuant to a reliable witness identification, was based upon probable cause, and was therefore not illegal"). But the identification was not even the only evidence of McManus's involvement in the crimes. As discussed above, all four bank robberies were captured on videotape. And while McManus contends that he was not definitively identifiable in the videotapes, there is no question that the robber in each case strongly resembles him. Taken together, this evidence plainly justified "a person of reasonable caution in believing that an offense [had] been . . . committed" by McManus. *Steppello*, 664 F.3d at 364.

McManus does not seriously dispute that the teller's pre-arrest identification of him as the robber was sufficient to justify his arrest. Instead, he contends that, at a minimum, a hearing is warranted because there are inaccuracies in the criminal complaint. In particular, he asserts that the complaint falsely alleges that he was arrested "near Tompkins Square Park," when in fact he was arrested in a delicatessen approximately one mile away from that location, and that the complaint inaccurately represents that his face was "fully visible" in the videotapes of each robbery. (Def.'s Supp. Mem. of Law Regarding Mot. to Suppress (Docket No. 21) at 2-3). Even assuming McManus is correct about these inaccuracies, however, they do not warrant a hearing, let alone suppression, because they are immaterial to the question of whether McManus's arrest was supported by probable cause. As the one case McManus himself cites (an unpublished Second Circuit summary order) makes clear, a challenge to the veracity of a criminal complaint merits a hearing "only if [the defendant makes] a 'substantial preliminary showing' that the complaint contained a false statement *that was necessary to*

5

*a finding of probable cause*, and that the false statement was made by an officer knowingly and intentionally, or with reckless disregard for the truth." *United States v. Ortiz-Gonzalbo*, No. 97-1210, 1997 WL 829306, at *2 (2d Cir. Dec. 9, 1997) (summary order) (emphasis added) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Here, as in that case, "[n]o semblance of any such showing was made . . . ." *Id.*

B.   **The Severance Motion**

Next, McManus moves, pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, for a severance of the four counts in the indictment. That Rule provides that, even if the joinder of offenses for trial is proper pursuant to Rule 8(a) (as McManus effectively concedes is the case here (Def.'s Mem. of Law Regarding Mot. for Severance (Docket No. 8) at 2), a court "may order separate trials of counts, . . . or provide any other relief that justice requires" if such joinder "appears to prejudice a defendant." FED. R. CRIM. P. 14(a). In order to prevail on a motion to sever, however, a defendant "must show not simply some prejudice but *substantial* prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (internal quotation marks omitted); *see also, e.g.*, *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) ("Given the balance struck by Rule 8, which 'authorizes some prejudice' against the defendant, a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'"). Moreover, Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)) (internal quotation marks omitted). In particular, "'less drastic measures [than

severance], such as limiting instructions, often will suffice' to cure any risk of prejudice and permit joinder." *Page*, 657 F.3d at 129 (quoting *Zafiro*, 506 U.S. at 539).

Applying these principles, courts — including the Second Circuit — have "routinely allow[ed] joinder of different bank robbery counts against a single defendant in the same indictment," *United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995), especially when the robberies "occurred in close geographical or temporal proximity and the perpetrator used the same *modus operandi* in each," *United States v. Tubol*, 191 F.3d 88, 94 (2d Cir. 1999); *see, e.g.*, *United States v. Chambers*, 964 F.2d 1250, 1250-51 (1st Cir. 1992) (Breyer, C.J.) (upholding joinder of six robberies where each "involved a similar institutional victim — a federally insured bank"; all occurred in a limited period of time in a limited area; and each had a similar *modus operandi* "with the robber always wearing a hat or cap, always threatening violence with a bomb or gun, and always giving the teller a handwritten note demanding money in basically the same language"); *Acker*, 52 F.3d at 513-14 (upholding joinder of four bank robberies over the course of nine months where the defendant, acting alone, "dressed in basically the same disguise at the time of each robbery"); *United States v. Di Giovanni*, 544 F.2d 642, 644 (2d Cir. 1976) (upholding joinder of bank robberies where they were committed within six days of each other and the *modus operandi* was the same in both); *United States v. Green*, 561 F.2d 423, 424, 426 (2d Cir. 1977) (upholding joinder of one bank robbery and two attempted bank robberies that took place in mid-town Manhattan within thirteen days).

In light of these cases, there is no merit to McManus's request for a severance. First, as in *Chambers* and *Green*, the robberies in this case involved "a similar institutional victim — a federally insured bank" (in fact, the indictment charges

7

McManus with robbing each of the banks twice).  *Chambers*, 964 F.2d at 1250; *see Green*, 561 F.2d at 424.  Second, "[t]he pattern of offenses was restricted to a short period of time, and to [the same] district of Manhattan."  *Green*, 561 F.2d at 426; *see Chambers*, 964 F.2d at 1250.  And third, the robberies each involved a "similar *modus operandi*," *Chambers*, 964 F.2d at 1251; *see Green*, 561 F.2d at 426, with the robber always wearing a black jacket, black pants, sunglasses, a hat, and (in three of the robberies) a metal wallet chain attached to his pants; carrying a backpack; pulling what appeared to be a firearm from his waistband and making a verbal demand for money; and stuffing the money into a pouch he had brought with him.

To be sure, as McManus contends, there were some minor differences among the robberies and the robber's *modus operandi* was not necessarily unique.  But joinder does not require evidence of identical methods or a unique *modus operandi*.  To the contrary, in a case "involving *similar* counts, institutional victims, mode of operation and time period," joinder is plainly proper.  *Chambers*, 964 F.2d at 1251 (emphasis added).  And any prejudice to McManus arising from a joint trial of the four robberies can be adequately addressed with limiting instructions.  *See, e.g.*, *Page*, 657 F.3d at 129.  In short, "[i]f ever there was a common scheme and plan permitting a joint trial of . . . multiple crimes," this case — like *Green* — is "a classic example."  *Green*, 561 F.2d at 426.

## CONCLUSION

For the foregoing reasons, McManus's motions for severance and to suppress (Docket Nos. 7 and 9) are DENIED and the Clerk of Court is directed to terminate the motions.  Because there is no need for a hearing in this matter, the hearing previously

scheduled for September 5, 2012, is CANCELLED. (At the conference held on May 4, 2012, the Court excluded time under the Speedy Trial Act through September 5, 2012. If either party desires an exclusion of time under the Speedy Trial Act beyond that date or on grounds other than those cited by the Court on May 4, 2012, it may make an appropriate application and submit a proposed order.)

It is hereby ORDERED that any written *voir dire* requests, requests to charge, trial memorandum, or proposed verdict form shall be filed, in accordance with the Court's Individual Rules and Practices in Criminal Cases (available at http://nysd.uscourts.gov/judge/Furman), by noon on **Wednesday, October 10, 2012**.

It is further ORDERED that the final pretrial conference is scheduled for **Friday, October 12, 2012**, at **2:00 p.m.**, in **Courtroom 6A** of the United States Courthouse, 500 Pearl Street, New York, New York.

SO ORDERED.

Dated: August 10, 2012
New York, New York

_____
JESSE M. FURMAN
United States District Judge